IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA

UNITED STATES OF AMERICA,
Plaintiff,

v.                                                    CASE NO.: 4:09-CR-52
                                                      Judge Mattice / Lee

TRAVIS KING
Defendant.

## SENTENCING MEMORANDUM OF TRAVIS KING

The purpose of this memorandum is to provide information to assist the court in evaluating the facts of this case and formulating a reasonable sentence. Mr. King and counsel do not in any way want to unintentionally convey to this Court by requesting the relief sought in this Memorandum that Mr. King is not accepting responsibility for his wrongful acts. Mr. King also appreciates this Court's rightful belief that punishment should be meted out in these cases that deters others from engaging in similar behavior. With this being said, we humbly believe that the facts of this particular case as explained below strongly support that a "sufficient but not greater than necessary" sentence warrants a downward departure from the advisory guideline range of 63-78 months or a variance outside of the guidelines.

This memorandum will also address the fact that many district courts are sentencing defendants who are charged with possession and distribution of child pornography below the guidelines. Many of these courts are sentencing substantially below the advisory guideline ranges based solely upon a finding that the sentencing guideline section applied to 18 U.S.C. sect. 2252(a)(5)(B), specifically U.S.S.G. sect. 2G2.2, has substantially increased the offense level associated with such offenses over the last ten years without any empirical basis to do so. Mr. King presents in this memo facts, information and case law in support of his request for a variance.

Sentencing for this matter is scheduled for March 29, 2010 at 9:00 a.m.

Case 4:09-cr-00052-HSM-SKL   Document 16   Filed 03/17/10   Page 1 of 21   PageID #: 25

I)        A Non-Guideline Sentence is Justified.


A).  **Introduction**

The Supreme Court in *U.S. v. Booker*, 543 U.S. 220 (2005) established that a district court judge is to impose a sentence upon a defendant that is reasonable.  *Id*. The sentence must be informed by the advisory guideline range but ultimately is driven by the sentencing factors set forth by Congress in 18 U.S.C. § 3553 (a). After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of the defendant. 18 U.S. C. § 3553 (a) (2).

Under *Booker*, every sentence meted out by a federal court must conform to the seven factors discussed in 18 U.S.C. sect. 3553(a), which gives a detailed enumeration of the appropriate sentencing factors to be considered in this case.  Even when a mitigating factor does not qualify for, or is prohibited from, a traditional downward departure under the guidelines, the sentencing court may still consider and apply such a factor in fashioning a sentence below the advisory sentencing guideline range.  The legislative history of 18 U.S.C. 3553(a) states that "from the public standpoint, the sentence should be of the type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. From the Defendant's standpoint the sentence should not be unreasonably harsh under all the circumstances of the case and should not differ substantially from the sentence given to another similarly situated defendant convicted of a similar offense under the circumstances."  *U.S. v. Pugh*, 515 F. 3d 1179, 1195 (11th Cir. 2008).

Defendant King submits that "independent of the Guidelines, application of the sentencing factors set forth in 18 U.S. C. sect. 3553 (a) warrants a lower sentence." *Id*. citing *Booker*, 543 U.S. at 259-60).  Also, Mr. King suggests that to avoid unwarranted disparity in sentencing that this Court may consider the fact that many other district courts around the nation are imposing a sentence below the current 2G2.2 guideline range of imprisonment based solely on the fact the guidelines are not supported by any empirical studies.

**B) Sentencing Factors § 3553 (a).**

**1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.**

a) Mr. King violated the law by possessing 3,244 images child pornography. (PSI p. 4 ¶6)

b) Mr. King has no prior criminal record.

c) Other than for the instant offense Mr. King has made very positive contributions to his family and community. (Exhibits 3 thru 9)

d) After a very brief denial when initially confronted during the execution of the search warrant Mr. King very quickly admitted his conduct to Agent Allen of the TBI and took full and complete responsibility for his actions, providing a full confession to Agent Allen.

d) Travis later made a full and very public confession to his community by standing before the entire congregation at his church and confessing his wrongful conduct. (Exhibits 7, 8).

e) Within three weeks of detection and prior to indictment Mr. King sought out counseling and treatment. Shortly thereafter he began treatment with Dr. Donna Moore a highly regarded therapist with extensive experience in treating sex offenders for the United States District Court Middle District of Tennessee (PSI p. 7 ¶ 6), (also see Exhibit 2, CV for Dr. Moore). Dr. Moore has opined that Mr. King is unlikely to reoffend (Exhibit 1, p. 6, ¶ 1), and is expected to testify that he would do well in an outpatient treatment program, and that he is likely to abide by community rules and treatment guidelines.

f) Mr. King has never committed a contact offense and volunteered for Agent Allen to take a polygraph regarding that issue.

g) Mr. King has never produced or sold child pornography,

h) Mr. King has never purchased child pornography.

3

i) Mr. King enjoys very strong support within the community including individuals at his former employment, his Church, and his family, and is a testament to the quality of citizen that he has been that so many individuals have stuck by him.

In Summary, other than the instant offense Travis King has been a productive member of society providing for his family, volunteered his time and expertise at his church. He has been friendly, and kind to everyone. He has never physically harmed anyone let alone a child, and he never produced, or sold child pornography.

**2) The Need for the Sentence Imposed.**

**a) The seriousness of the offense, respect for the law, just punishment. And,**

**b) Affording adequate deterrence.**

Congress has directed the district courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing. 18 U.S.C. sect. 3553(a). A sentence that is too long for the offense does not promote respect for the law but, rather, the opposite is true. *United States v. Williams*, 481 F. Supp. 2d 1298, 1304 (M.D.Fla. 2007)(noting that too lengthy of sentence promotes disrespect for the law).

Mr. King recognizes that his crime was certainly a serious violation and that the children were victimized by his conduct. What Mr. King does request of this Court is to consider whether a prison sentence is necessary to acknowledge the seriousness of this offense or to promote respect for this law when the offense did not involve buying or selling images and did not involve the production of pornography. Does simply possessing or receiving pictures and videos warrant incarceration for a person such as Mr. King who is not likely to reoffend and is not likely to be a danger to the community in the future.

It should be remembered that as a part of his conviction Mr. King will be required to register as a sex offender for life. Sex offender registration imposes upon a convicted sex offender more than a simple registration with authorities. Sex offender registration will

-restrict where Mr. King can live and work,

-cause his name, photograph, address, and conviction information to be posted on the internet.

4

These serious consequences will "brand" Mr. King for life, and will significantly curtail his liberty. Furthermore Mr. King has already spent over three months in jail since entering his plea awaiting sentencing. Is further incarceration necessary or just?

What Mr. King did was to possess pictures that he obtained from the internet. The nature of these images is surely repugnant. However, does the possession of photographs or videos and nothing more warrant the imprisonment for 5 to 6 ½ years of a man who has been a benefit to his family and his community, does such a sentence do justice, or does such a sentence simply extract unwarranted vengeance based upon society's repulsion at the images without due regard for the amount of actual harm to society or a particular victim?

Mr. King has not requested that his Attorney make the following point and therefore to the extent that the argument is not well taken it should not be a reflection against Mr. King nor his acceptance of responsibility and his desire to participate in treatment and to become a better person. What Counsel asks of this Court and of the Government is how does a sentence of 5 to 6 ½ years in prison for a person such as Mr. King accomplish justice? By not committing a contact, economic, or production offense how has Mr. King himself contributed to or made child pornography more prevalent or put other children at risk? Yes, there is a violation of the right to privacy, and the shame that the children must feel knowing that images of their abuse are viewed by individuals like Mr. King. Therefore, whatever punishment is necessary to extract fair and just retribution for the violation and shame of those victims would be warranted. However, punishment should not be melted out against Mr. King for contributing to the existence of child pornography because he did not contribute to its existence. Counsel suggests that the shame and loss of privacy Mr. King will incur for the rest of his life as a registered convicted sex offender with restrictions upon his residency and employment are retribution enough in this case.

### c) Protecting the Public from further crimes of the defendant.

As discussed above Mr. King immediately accepted responsibility, made a very public confession. Such conduct arguably demonstrates that Mr. King is truly remorseful and has a strong desire to conduct himself in a lawful and more honorable manner in the future. He also in a timely manner submitted to a psychosexual exam with a Dr. Moore a well respected psychologist with a great deal of experience in the field of sex offender treatment. Dr. Moore has opined that Mr. King presents a low risk to re-offend (Exhibit 1, p. 6, ¶ 1) and is expected to

testify that he is a very good candidate for out patient treatment.  Based upon these facts it is submitted that incarceration of Mr. King is not needed in order to protect the Public.

**d)  Providing the Defendant with educational, vocational, medical, or other correctional treatment in the most effective manner.**

Mr. King has an education and does not need educational or vocational assistance.  He does need therapy for his addiction to pornography and child pornography.  As stated, Dr. Moore has opined that Mr. King is a good candidate for outpatient therapy.  Therefore incarceration for therapy is not needed or warranted.

**3.  The kinds of sentences available.**

The statutory penalty for Mr. King is up to 10 years imprisonment.  This Court has available all sentencing options including probation, home confinement, incarceration, supervised release, or a combination of these sentences.  Based upon the factors present in this case it is respectfully submitted that a sentence of home confinement followed by community release are sufficient to meet the sentencing factors of §3553(a).

**4.  The guideline range.**

The recommended guideline range is too harsh under the facts of this case and the considerations of § 3553 (a). Chief Justice Collier of this Court in *United States v. McElheney* 2009 WL 1904565 (July 2, 2009) stated: *the child pornography Guidelines do not fully describe the current sentencing practices of district courts or adequately differentiate between the least and worst offenders, courts cannot rely fully on the child pornography guidelines to be a reliable assessment of a sentencing range that approximates the § 3553(a) factors in a typical child pornography case.*  Citing *U.S. v. Johnson,* 588 F.Supp. 2d at 1004.

In *Nelson v. United States*, 555 US ---, 129 S.Ct.890 (2009) (No. 08-5657 Decided January 26, 2009), the Supreme Court held "[O]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guideline range is reasonable. "In *Rita* we said as much, in fairly explicit terms: "We repeat that the presumption before us is an appellate court presumption….[T]he sentencing court does not enjoy the benefit of a legal presumption that the

guidelines sentence should apply." 555 U.S., at 351, 127 S.Ct. 2456." *Id.* at 891. The Supreme Court cited *Gall v. U.S.*, 128 S.Ct. 586, 169 L.Ed.2d 445(2007) and stated that "district courts, in considering how the various statutory sentencing factors apply to an individual defendant, "may not presume that the guidelines range is reasonable." *Id.* at 892. The Supreme Court held that the guidelines are not mandatory nor are they to be presumed reasonable. *Id.* at 892.

In applying the *Rita v. U.S.,* 551 U.S. 338, 127 S.Ct. 2456, 2465 (2007) mandate that a district court's below the guidelines sentence is entitled to deferential review by the appellate court to determine a sentence's reasonableness, the Seventh Circuit recently affirmed a 70 month sentence for downloading and distributing child pornography (more severe conduct that involved in the instant case), where the guideline range was 121-151 months. *U.S. v. Wachowiak,* 496 F. 3d. 744 (7th Cir. 2007). The *Wachowiak* court endorsed the district court's freedom and discretion under *Rita* to find the sentencing guidelines inadequate. The appellate court approved the district court's review of Sect. 3553(a) factors, and it's conclusion that the guidelines failed to adequately account for all relevant sentencing factors.

Many courts around the country are sentencing people charged with child pornography law violations, most involving the more serious charge of distribution of child pornography materials, to sentences well below the advisory guideline range because of how the USSG sect. 2G2.2 guideline has been amended over the course of the last ten to fifteen years without any empirical basis on which to do so.

District courts are expressing real concern about sentences in "downloading" cases based upon USSG 2G2.2 not being formulated by the Sentencing Commission and the fact they are not based upon empirical data and national experience. "The guidelines for child exploitation offense were not developed using an empirical approach by the Sentencing Commission, but rather were mainly promulgated in response to statutory directives. Specifically, the PROTECT Act directly amended guideline enhancements for specific offense characteristics. These modifications do not appear to be based on any sort of empirical data, and the Courts have been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses." *United States v. Shipley*, 560 F. Supp. 2d 739, 744 (S.D. Iowa 2008).

Chief Judge Batallion of the District of Nebraska in *U.S. v. Baird*, 580 F. Supp. 889 (D. Neb. 2008), concluded that based on the history of the child pornography guidelines as the

Commission has keyed them in to policy and statutory mandates, the sentencing ranges of imprisonment are "a less reliable appraisal of a fair sentence." (citing *Kimbrough*, 552 U.S. at ---, 128 S.Ct. at 567). "When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.' " *See, e.g., Kimbrough,* 552 U.S. at ----, 128 S.Ct. at 574 (*quoting Rita,* 127 S.Ct. at 2465); *see also Gall,* 128 S.Ct. at 594." Based upon this reason alone, the court deviated from the guideline range of 46 to 57 months and sentenced Baird to 24 months, which "will more closely approximate the sentencing range that was in effect before the Sentencing Commission, in response to a Congressional directive, collapsed the guideline dealing with possession (formerly U.S.S.G. § 2G2.4) into the guideline dealing with trafficking of pornography (U.S.S.G. § 2G2.2) in 2003. That action, together with the expansive coverage of "distribution" in U.S.S.G. § 2G2.2(b)(3)(A) through (F), and the application of significant quantity-driven enhancements for the number of images, has served to muddy the qualitative distinctions between "mere possession" and "distribution of child pornography. It is clear that one possessing child pornography has far less culpability than one distributing pornography, who, in turn, has far less culpability than one who produces child pornography." *Id.* at 895. The greater culpability of an actual predator or abuser should be reflected in a sentence that greatly exceeds the punishment for the exploitative crimes that do not involve acts of abuse by a defendant. In fact, the "distribution" criteria are not helpful in this case. The Guidelines at issue do not adequately reflect those important distinctions in levels of culpability." *Id.* at 895.

Judge Lynn Adelman in *U.S. v. Hanson*, 561 F. Supp. 2d 1004 (E.D. Wis. 2008), found that "given all the flaws" in USSG 2G2.2 the sentencing range reflected in the advisory guideline range does not deserve deference. Judge Adelman and other district judges around the country are citing what has become an influential research article by Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines. (July 8, 2008).* The article analyzes the Congressional amendments to the Child Pornography guidelines that have increased sentences four fold in the last ten years based upon the same criminal conduct without any empirical basis or input from the Sentencing Commission.

8

(Article available at www.fd.org/pdf_lib/child%20porn%20july%20revision.pdf (last visited February 9, 2010).

As Stabenow explains, much like the crack guideline criticized by the Supreme Court in *Kimbrough*, guideline 2G2.2 is not representative of the Commission's typical role or based upon any empirical study. The guideline has been steadily increased despite evidence and recommendations by the Commission to the contrary. Congress has repeatedly amended it directly, ostensibly to target mass producers of child pornography and/or repeat abusers of children, a class of offenders that make up less than 5% of those affected by the changes. The most recent changes from 2003 apparently came from two lawyers in the Justice Department who persuaded a novice Congressman to add them to the popular Amber Alert bill. (Stabenow article, *supra*, at 27). "To the extent that the advisory guidelines deserve continued respect from courts, that respect will be greatest where the Commission has satisfied its institutional role of relying on evidence and study to develop sound sentencing practices. This guideline simply does not represent that role, as the Commission itself has acknowledged. These amendments destroyed some of the careful distinctions the Commission had drawn between true peddlers of child pornography and more simple possessors or transporters. To its credit, and as in the crack cocaine context, the Commission sought to persuade Congress to not make such changes, but to no avail." *Id*. at 3-7 (quoting letter from Chair of the Commission). Specifically, the Commission has noted that the enhancement for use of a computer does not make much sense because online pornography comes from the same pool of images found in specialty magazines or adult bookstores. Further, to the extent that use of a computer may aggravate an offense, it does not do so in every case. For example, someone who e-mails images to another is not as culpable as someone who sets up a website to distribute child pornography to a large number of subscribers. If the defendant did not use the computer to widely disseminate the images, use them to entice a child, or show them to a child, the purpose for the enhancement is not served. Yet it applies in virtually all cases. *Id*. at 14-15.

Chief Judge Pratt[1] in *U. S. v. Johnson*, 588 F. Supp. 2d 997 (S.D. Iowa 2008) found that the "modifications [to the sentencing guidelines over the past 20 years] do not appear to be based

_____

[1]  Chief Judge Pratt is the district court judge who's decision to impose a variance from a guidelines sentence of imprisonment to probation in a drug case led to the U.S. Supreme Court's decision in *Gall v. U.S*., 128 S.Ct. 586 (2007) upholding Judge Pratt's variance after the Eight

9

on any sort of empirical data, and the Court has been unable locate any particular rationale for them beyond the general revulsion that is associated with child exploitation offenses." *Id*. at 1003. "Thus, because the guidelines at issue in this case do not reflect the unique institutional strengths of the Sentencing Commission in that they are not based on study, empirical research, and data, this Court as it did in *United State v. Shipley*, "affords them less deference than it would to empirically grounded guidelines." (Citing *Shipley*, *supra*, at 745-746). (Also citing *U.S. v. Kimbrough*, 128 S.Ct. 558, 574 (2007): guideline ranges created when the Commission departed from past practices are a less reliable appraisal of a fair sentence). The court also references Skye Phillips, *Protect Downward Departures: Congress and Executive's Intrusion into Judicial Independence*, 12 J.L. & Pol'y 947, 967-84 (2004) (discussing the history of the guideline modifications made in the PROTECT Act and the fact that the changes were made without notifying or consulting the Sentencing Commission); *see also United States v. Detwiler*, 338 F.Supp.2d 1166, 1170-71 (D.Or.2004) (discussing the Feeney Amendment to the PROTECT Act). *Id*. at 1003-1004.

The genesis of the PROTECT Act carries with it no suggestion of the "empirical data and national experience" the court thought so important in *Kimbrough*. Two attorneys at the Department of Justice simply convinced Florida Congressman Tom Feeney, who was new to Congress, to insert changes to the guidelines into a unrelated, popular bill, without notice to the Sentencing Commission. *See Phillips article, supra* at 976-984 (2004) and Laurie P. Cohen & Gary Fields, "*Ashcroft Intensifies Campaign Against Soft Sentences by Judges*," *Wall St. J.,* Aug. 6, 2003 at A1. The purpose of the PROTECT Act was to reconcile various bills, establish a nationwide Amber Alert system to be used in cases of child kidnapping, and to address virtual child pornography. *Phillips article* at 967-984. As the legislation progressed, Congressman Feeney proposed an unrelated amendment to the bill that directly amended various guidelines. *Id.; see also United States v. Detwiler*, 338 F.Supp. 2d. 1166, 1170-1171 (D. Or. 2004).

---

Circuit reversed in *Gall v. U.S*., 446 F. 3d 884(8th Cir. 2007). The Supreme Court, *supra*, at f.n. 2 stated "the Sentencing Commission departed from the empirical approach when setting the Guidelines range for drug offenses, and chose instead to key the Guidelines to the statutory mandatory minimum sentences that Congress established for such crimes. See United States Sentencing Commission, Guidelines Manual §1A1.1 (Nov. 2006) (USSG). This decision, and its effect on a district judge's authority to deviate from the Guidelines range in a particular drug case, is addressed in *Kimbrough v. United States*, *supra*, at 128 S.Ct. at 575."

Representative Feeney later admitted he was just the "messenger" for the two Justice Department officials who authored the provision and chose not to notify or consult the Sentencing Commission. *Phillips* at 983 n. 185, 986-987. Debate on the amendment was limited to twenty minutes. *Phillips* at 983. The House later passed a child abduction prevention act with the Feeney amendment added. *Id.* at 992-994. <u>Despite objections by the Sentencing Commission, the Chairman of the House Committee on the Judiciary, the Judicial Conference of the United States and the American Bar Association, these changes were made without adequate review and analysis, and the PROTECT Act became law on April 30, 2003</u>. *Phillips article at Id.* at 990-992, 991 n. 219.

The shortcomings in the legislative process involved in the Feeney amendment as well as the absence of a more definitive justification from the Sentencing Commission are considerations for the Court in determining how much to rely on the advisory guideline range. They enter into the determination of whether the Sentencing Commission, in amending the guidelines, acted in "the exercise of its characteristic institutional role." *Kimbrough*, 128 S.Ct. at 575. As explained in *Rita v. United States*, 127 S. Ct. 2456, 2464-2465 (2007), the exercise of this institutional role has two basic components: (1) reliance on empirical evidence of pre-guideline sentencing practice; and (2) review and revision in light of judicial decisions, sentencing data, and comments from participants and experts in the field.

The importance of whether empirical evidence of past practice was used to develop a particular guideline was repeated in both *Gall v. United States*, 128 S. Ct. 586, 594 & n. 2 (2007) (noting that while the guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," "notably, not all of the Guidelines are tied to this empirical evidence"), and *Kimbrough*, *supra*. It is important because the fulfillment of the purposes of sentencing established in 18 U.S.C. sect. 3553(a) rests upon the Commission's compliance with its institutional role. When Congress directed the Commission to design the guidelines based on the purposes of sentencing set forth in § 3553(a)(2), *see* 28 U.S.C. § 991(b), a "philosophical problem" arose when the Commissioners could not agree on which purpose should predominate. Because of that, they abandoned that approach and instead "took an 'empirical approach' beginning with an empirical examination of 10,000 presentence reports setting forth what judges had done in the past and then modifying and adjusting past practice in the interest of greater rationality, avoiding inconsistency, complying

with Congressional instructions and the like." *Rita*, 127 S. Ct. at 2464, citing U.S. Sentencing Guidelines, Ch. 1, Pt. A(3)(1988).

This all matters to Mr. King because if the Commission did not rely upon past practice, and/or did not review and revise the guideline in response to data and feedback from judges and others in the field, it is not "fair to assume" that the guideline range of imprisonment "reflect[s] a rough approximation" of sentences that "might achieve 3553(a) objectives." *Rita*, 127 S.Ct. at 2464-2465. When, as here, the guideline is not based on "empirical data and national experience," it "does not exemplify the Commission's exercise of its characteristic institutional role," and it is not an abuse of discretion to conclude that it yields a sentence that is greater than necessary even in a "mine-run case." *Kimbrough*, 128 S.Ct. at 575. Thus, it would not be an abuse of discretion in Mr. King's case to conclude that the applicable guideline, § 2G2.2, yields a sentence that is greater than necessary. See *U.S. v Grober*, ---F. Supp. 2d ---, 2008 WL 5395768 (D.N.J. December 22, 2008) (imposition of 60 month sentence from a sentencing range of 235 to 293 months for possession of child pornography and receipt and distribution of child pornography; "[T]he Court joins thoughtful district court judges whose work has convinced them that guideline section 2G2.2. must be given less deference than the guidelines traditionally command." *Id*. at 85).

Courts have recognized that child pornography offenses are sometimes so repugnant that there is a risk that sentencing courts will disregard the requirements of sentencing. *See United States v. Goff*, 501 F. 3d 250, 260 (3rd Cir. 2007)("child pornography is so odious, so obviously at odds with common decency, that there is a real risk that offenders will be subjected to indiscriminate punishment based solely on the repugnance of the crime and in disregard of other Congressionally mandated sentencing considerations"). Nonetheless, it is clear that the sort of considerations that apply to any case also apply to child pornography cases:

> [A] District judges' duty in sentencing child sex offenders is no different than it is in any other case. Child sex cases are not immune from the dictates of *Booker*. *United States v. Schmitt*, 495 F3d 860 (7th Cir. 2007). ("We have held that " § 3553(b)(2), [the sentencing provision of the PROTECT Act intended to restrict the authority of the district courts to depart from the Guidelines in sexual offense and child pornography cases] cannot constrain the discretion of a district court to impose a sentence outside the range recommended by the Sentencing Guidelines.

U.*S. v. Grigg*, 442 F.3d 560, 564 (7th Cir. 2007). Please note that after *Booker*, even in light of the PROTECT Act, below the guideline sentences were imposed in 39% of the child

pornography and sex cases post-*Gall* and post-*Kimbrough* according to the USSC. See USSC, Prelminary Post-Kimbrough/Gall Data Report, tbl. 4 (Sept. 2008). www.ussc.gov/USSC_Kimbrough_Gall_Report_September_08_Final.pdf (last checked Feb. 26, 2009). The Honorable Chief Senior Judge Roger Vinson, albeit he relied on sect. 3553(a) to impose a below the guidelines sentence on October 21, 2008 in *U.S. v. Kenneth Force, Case No.* 3:08cr56/RV, noted the troublesome fact that district courts around the country were imposing disparate sentences in child sex cases. (Sentencing Transcript (ST) p. 15, line 27; p. 27, line 12). Chief Judge Vinson cites the political forces behind Congress' steady increase to the child sex guidelines over the last 10 to 15 years. (ST p. 15, line18). Judge Vinson imposed a variance due to sect. 3553(a) factors, specifically naming Mr. Force's minimal possibility of recidivism ("specific deterrence"), lack of criminal history, his taking a polygraph indicating he had never attempted to or acted sexually inappropriate with a child and his seeking out therapy. (ST pgs.23 to 25). Also, Judge Vinson, sitting by designation as part of the panel in a Sixth Circuit case, *U.S. v. Prisel*, 2008 WL 4899451(November 13, 2008; 6th Cir. 2008) affirmed a variance from the district court wherein the district court imposed a sentence of one day in prison, followed by 18 months of home confinement for a defendant that possessed in excess of 1000 images of child pornography. *Id.* at 1, 8. The court held "[A]s in *Gall,* the district judge in the instant case correctly calculated the applicable Guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered the § 3553(a) factors, and thoroughly documented her reasoning. *See Gall,* 128 S.Ct. at 598. The appellate court in affirming the variance, found that the district court noted that Prisel has no prior record, that the mental health expert opined that Prisel is not a danger to the community and presents little risk of recidivism for future behavior with children, and is seeking to make himself a better person. The district court included in its "[R]easons for Departure" Prisel's age (44 at sentencing), his mental and emotional condition and his family ties and responsibilities. The court noted that it believed that Prisel is a one-time offender, and that he is unlike many of the other defendants in similar cases the court had seen in that he would not benefit from incarceration. *Id.* at 8.

Although the guidelines are considered advisory after *Booker*, the application of sect. 3553(a) is mandatory. Mr. King respectfully submits that the guideline score is not an accurate indicator of a just sentence in this cause and respectfully requests that the Court in determining the proper sentence provide much more weight to all other factors listed pursuant to § 3553(a).

5. **Policy statements of the Sentencing Commission.**

The Sentencing Commission having noted the large percentage of departure sentences in possession of child pornography cases has announced its intent to review the incidents and reasons for such departures, and to study recidivism among child pornography offenders during its amendment cycle ending in May 2010. This signifies the Commissions acknowledgment that something is wrong with the current guidelines as they apply to child pornography offenses.

6. **The need to avoid unwarranted sentencing disparities.**

In a circumstance where the guidelines have proven ineffective a court will look to other courts and other sentences in order to attempt to avoid sentencing disparities.

Judge Chief Justice Collier of this District noted:

*In addition to the available decisions of other district courts, the statistics*
*Published by the Sentencing Commission show a widespread trend away*
*From the Guideline ranges suggested by USSG§2G2.2. The Court in*
*. . . In the absence of defensible Guidelines, district courts are left*
*Without a meaningful baseline from which they can apply sentencing*
*Principles. The sentencing practices of other courts demonstrate a*
*Guideline sentence would create disparity in this case.*

*U.S. v. McElheney,* 2009 WL 1904565 (E.D. Tenn.). In considering an appropriate sentence for Mr. King it is then instructive to look at some other sentences imposed upon other defendants. Consider a sampling of cases from all around the nation in which the courts are imposing a variances of 50% or more on offenders in child pornography cases, which are, for the most part, more serious than Mr. King's in that they almost all involve distribution of child pornography (or worse).

In *United States v. Gray*, 453 F. 3d 1323 (11th Cir. 2003). In *Gray*, the defendant was charged with distribution of child pornography and possession of child pornography and had been involved in same for five years. *Id*. at 1323-1324. He failed to appear for his plea hearing and was later apprehended. The advisory guidelines called for a custodial sentence of 151 to 188 months. However the district court, taking into consideration his age, health problems and

Case 4:09-cr-00052-HSM-SKL   Document 16   Filed 03/17/10   Page 14 of 21   PageID #: 38

minimal criminal history that was so old it could not be scored, sentenced Gray to 72 months, less than half of the advisory guideline range of imprisonment. *Id*. at 1324.

In *United States v. Halsema*, 180 Fed. Appx. 103 (11th Cir. May 9, 2006) a *per curiam* unpublished decision from the Northern District of Florida, the appellate court found a 24 month sentence reasonable albeit it was less than half of the minimum guideline range of 57 to 71 months. *Id*. at 104. The district court based its reasoning in part on expert testimony that a longer sentence would negatively affect Halsema's rehabilitation and that he had progressed with the therapy he had received already and that he had suffered from the incarceration he had incurred presentencing. *Id.* at 105. The Eleventh Circuit found that although the reasons for a variance might not have sufficed as a basis for departure under the mandatory guidelines they were appropriate reasons under an advisory system. *Id*. at 105.

In *United States v. Cherry*, 487 F. 3d 366 (6th Cir. 2007) the appellate court affirmed a sentence of 120 months where the applicable guideline range called for a sentence of 210 to 262 months after finding that the district court appropriately took into account the guidelines range and the circumstances of the particular defendant. Cherry had been charged with four counts of "distribution of child pornography," "receiving child pornography," and "possessing child pornography." In fashioning a reasonable sentence, and regarding the sect. 3553(a) deterrence prong and the need to protect society, the district court took into consideration that Cherry possessed "self-knowledge" of his actions and presentenced little risk of reoffending, that Cherry would get little treatment in prison and weighted this factor heavily in favor of a lower sentence because Cherry had a desire to continue therapy. *Id.* at 368. The court had heard from mental health professionals who had opined that Cherry was in the lowest risk category for sexual offenders and he was not a pedophile. *Id.* at 368.

In *United States v. Wachowiak*, 496 F. 3rd 744 (7th Cir. 2007) (*supra*, section II(A)), the appellate court affirmed a 70 month sentence for downloading and distributing child pornography where the guideline range was 121-151 months. The court in Wachowiak considered the lifelong collateral consequences that a defendant convicted of possession of child pornography will have to endure, that any period of imprisonment would unduly delay Wachowiak's access to treatment and an opinion from an expert that Wachowiak was unlikely to engage in improper conduct with children. Id. at 754.

In *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006), the defendant was charged with two counts of "distribution of child pornography" and one count of "possession of child pornography" but under a plea agreement entered a plea to one count of "distribution of child pornography."  The appellate court affirmed the district downward variance to a custodial sentence of 87 months when the advisory guideline sentence suggested a custodial sentence of 108 to 135 months.  Baker had been involved with chatting in chat rooms with underage boys and distributing child pornography to them.  "The district court's sole written explanation of the sentence imposed reads:  There is no evidence in the record to indicate that the defendant has acted out against any child. The sentence of 87 months' imprisonment is sufficient, but not greater than necessary to comply with sentencing purpose." *Id*. at 991.  However, the appellate court noted it is not limited to the written reason for the variance imposed by the district court but may look at the record as a whole to determine if other sect. 3553(a) factors were considered.

 In *U.S. v. Grossman*, 513 F.3d 592 (6th Cir. 2008), defendant Grossman was child with possession of child pornography and distribution of same.  His advisory guideline called for a custodial sentence of 135 to 168 months.  The district court's sentence of 66 months followed by ten years of supervised release to be reasonable.  The court based its sentence on 3553(a) factors, specifically that Grossman was an educated man suggesting he was a promising candidate for rehabilitation, the he appreciated the magnitude of his crime and that "he understood the victims in this matter were really the children." *Id.* at 596 to 597.

In *U.S. v. Polito*, 215 Fed. Appx. 354, (5th Cir. 2007), the appellate court in an unpublished opinion upheld a  probationary sentence, including one year of house arrest, in a case involving a defendant who had transported and possessed child pornography.  His guideline sentence, applicable in 1999, had a range of imprisonment of 27 - 33 months.  The appellate court found that the district court had properly taken into consideration sect. 3553(a) factors including "his mental condition had prevented him from acting rationally," that there was no evidence he ever intended to conduct predatory sexual activities with children,  the amount of time that had passed since the initial search, and combined with the five year period of home confinement and probation, the community would have a lengthy period of time for which to have a record of his behavior.  *Id.* at 356 to 357.

All of the cases cited above where either departures or variances affirmed by the appellate courts that involved defendant's whose criminal behavior involved at least distribution

of child pornography if not something more serious.  All of the cases cited above, downward departures or variances were given for possession *and distribution* of child pornography. To sentence Mr. King in the name of uniformity to the advisory guideline range of 57 to 71 months as if there was no factually significant basis that warrant a variance would seem to ignore the statutory command to avoid unwarranted disparities in sentencing.

   We humbly plead with the Court to consider all of these factors under 18 U.S.C. sect. 3553(a)  and sentence Mr. King to a sentence that meets the sentencing goals as outlined in *Rita*, *Gall, Kimbrough* and *Booker*.

   **7. Need to provide restitution to victims.**

   There was no restitution identified in the pre sentence investigation report.

**II) A Departure Sentence is justified in this case.**

   **A) Pre-Booker Sentencing Guidelines Departures**

   The sentencing guidelines themselves acknowledge the importance of using departures to fashion a specific sentence that "fits" the person and conduct before the Court in each case. USSG sect. 5H and 5K2.0.  Departures perform an integral function in the sentencing guideline system and help courts avoid a mechanical application of the guidelines that fail to achieve the statutory goals of sentencing. 28 U.S.C. sect. 991(b)(1) and USSG sect. 5K2.0, background.

   In the context of this case, Defendant acknowledges that the PROTECT Act sought to cut back the grounds for departures in sex and child porn cases. However, those cut backs are now merely advisory under *Booker's* remedial opinion.  In fact, circuit and district courts have held that *Booker* specifically applies to excise certain PROTECT Act provisions of the sentencing guidelines. *U.S. v. Sharpley*,  399 F.3d 123 (2nd Cir. 2005)("no unique feature of Guideline sentences for child crimes and sexual offenses that would prevent them from violating the Sixth Amendment in the same manner as Guideline sentences for other crimes"). See also *United States v. Schmitt*,  495 F.3d 860 (7th Cir. 2007) and other cases.

Case 4:09-cr-00052-HSM-SKL   Document 16   Filed 03/17/10   Page 17 of 21   PageID #: 41

1. **Extraordinary Acceptance of Responsibility and Remorse**

Prior to *Booker*, the Eleventh Circuit has approved sentences involving downward departures for extraordinary acceptance of responsibility and remorse. See *U.S. v. Kim*, 364 F.3d 1235 (11th Cir. 2004) and *U.S. v. Crawford*, 407 F.3d 1174 (11th Cir. 2005).

> (a) Mr. King immediately provided a full confession to agents when they executed the search warrant admitting his conduct without rationalization or excuse. Mr. King immediately and voluntarily submitted to a psychosexual examination and to treatment with a psychologist with a stellar reputation in treating sex offenders.
>
> (b) Mr. King voluntarily and publicly faced his community accepted responsibility for his wrongful conduct by making an open confession in his church and before its congregation.
>
> (c ) Mr. King upon his initial consultation with his Attorney fully confessed and stated that he wanted to accept responsibility and did not want to attempt a defense against the merits of the evidence stating that he was guilty and had no excuse.
>
> (d)  Mr. King voluntarily sought treatment in a timely manner.

It is difficult to think of what more Mr. King could have done to have provided an extraordinary acceptance of responsibility.


2. **Susceptibility to Being Victimized in Prison.**

Mr. King has had no prior contact with the criminal justice system, has never been incarcerated prior to being remanded after his plea of guilty in this case. Mr. King's personality contains traits of being shy, inhibited, and hesitant (Exhibit 1, p. 5. ¶ 2). He is of slight build and presents a meek and timid demeanor. Even in the best of facilities Mr. King will have a more difficult time adjusting to and standing up for himself than the "average" inmate.

Prior to the guidelines becoming advisory some courts have departed from the guidelines based upon a defendant being unusually susceptible to abuse by other inmates while in prison. In some cases, the downward departures have been based upon both the specific attributes of the defendant and the nature of the offense. See *U.S. v. Parrish*, 308 F.3d 1025 (9th Cir. 2002). (upholding a departure where the district court did not rely solely on the defendant's "mere membership in a class of offenders"). Other courts have departed based upon the specific

demeanor and characteristics of a particular defendant as well. *U.S. v. Wilke*, 156 F.3d 749 (7th Cir. 1998) and *U.S. v. Lara*, 905 F.3d 599 (2d Cir. 1990). In *Wilke*, the Seventh Circuit held that the district court may depart downward based upon the demeanor and appearance of the defendant. *Id*. at 754. (Wilke was reversed and remanded for resentencing based upon improper consideration of defendant's contributions to the community that enabled him to victimize children).

## II) Non Applicability of Sadistic or Masochistic Adjustment

Although possibly tardy and better raised at the objection phase to the pre-sentence report Defense Counsel in preparation for the Sentencing hearing noticed a fact in the Pre Sentence Report and in the investigative report that he had over looked before. Mr. King has been scored with a plus four adjustment for possessing images that reflect sadistic or masochistic images. It appears from the reports that only one such image was found in 3,244 images. 18 U.S.C. § 2252 (A)(5)(A) requires *knowingly possess or knowingly access*. Defense Counsel submits that any increased adjustment must therefore also carry the element of *knowingly*. Because Mr. King downloaded the images from file sharing and based upon the nature of file sharing it is very possible to download images that the nature of the images is not known at the time of download, and because there is no evidence in the PSI or the investigative reports that demonstrate Mr. King knowingly downloaded those types of images, it is submitted that one image out of more than 3,000 is insufficient to allow the application of that adjustment. It is therefore requested that the court not consider or impose this upward adjustment in any sentence imposed by this court.

### Conclusion

Even when the Sentencing Guidelines were mandatory, pre-*Booker*, courts were to treat those people who stood before them for sentencing as individuals. See *Koon v. U.S*., 518 U.S. 81, 113(1996)(the court should "consider every convicted person as an individual and every case as a unique study in the human failing that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). We have respectfully suggested Sect. 3553(a) factors which we humbly and respectively request the Court consider in imposing a downward variance from the guideline sentence of 57 to 71 months.

With the validity of USSG 2G2.2 being questioned by other, respected district courts

around the nation based upon the tremendous increase in punishment meted out by this guideline without any empirical basis to support it, another valid basis exists to join the many other district courts nationwide and sentence Mr. King to a lesser sentence than what is called for by the now existing, congressionally amended advisory sentencing guidelines. We humbly and respectfully request this court take into consideration sentences imposed by the other district courts in imposing a sentence consistent the goals of sentencing; to do so would respectfully avoid an unwarranted disparity.

Respectfully submitted,


s/ Brent Horst
Brent Horst, (B.P.R. 016532)
Attorney for Travis King
P.O. Box 160690
Nashville TN 37216
Ph. (615) 259-9867, FX (615) 227 – 5910
BrentHorst@comcast.net


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to John Mccoon, Assistant United States Attorney by electronic filing on this date.

Respectfully submitted:


s/ Brent Horst
Brent Horst, (B.P.R. 016532)
Attorney for Travis King
P.O. Box 160690
Nashville TN 37216
Ph. (615) 259-9867, FX (615) 227 – 5910
BrentHorst@comcast.net

Notice of Attribution

The majority of the citations and the legal argument contained within this memorandum regarding the application of sentencing guidelines in child pornography cases were used with permission from pleadings prepared and filed by M. James Jenkins, Esq., 1211 West Garden St. Pensacola, Florida, in a separate case in the Northern District of Florida.

s/ Brent Horst